UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVSIION

| | | |
|---|---|---|
| GLENN ALTSCHULD, | ) | CASE NO. 1:17-CV-1959 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | THOMAS M. PARKER |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## I. Introduction

Plaintiff, Glenn Altschuld, a *pro-se* litigant, seeks judicial review of the Commissioner of Social Security's application of the government pension offset ("GPO") provisions of the Social Security Act to his widower's benefits. He asserts that the offset provisions violate the Fifth and Fourteenth Amendments to the United States Constitution. This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3) and Local Rule 72.2(b).

Because the Commissioner correctly applied the GPO provisions and because they do not violate the U.S. Constitution, I recommend that the final decision of the Commissioner be AFFIRMED.

## II. Statement of Facts

The facts of this case are not in dispute. Glenn Altschuld worked both in private sector employment and as a public school teacher prior to retirement. ECF Doc. 18 at Page ID# 63. He retired in 1991 and began receiving a pension from the Ohio State Teachers' Retirement System

("STRS").  *Id.*  A year later, he began receiving Social Security benefits.  *Id.*  His Social Security benefits are subject to the GPO, a fact that he does not challenge.  *Id.*

Glenn Altschuld was married to Audrey Altschuld.  (Tr. 19)  Mrs. Altschuld worked in private employment.  After retirement, she collected Social Security retirement benefits until she died on July 31, 2012.  ECF Doc. 18 at Page ID# 63.  On August 28, 2012, Altschuld filed for widower's insurance benefits.  (Tr. 19)

On September 16, 2012, the Social Security Administration informed Mr. Altschuld that he was entitled to widower's benefits but, because these benefits would be less than two-thirds of his monthly pension payment, the GPO reduced his widower's benefits to zero.  (Tr. 24-27)  Mr. Altschuld requested reconsideration of the administration's determination.  (Tr. 29-31)  On reconsideration, the administration affirmed the initial decision that the GPO provision of the Social Security Act had been correctly applied to Mr. Altschuld's widower's benefits.  (Tr. 38-40)

Altschuld requested a hearing, and Administrative Law Judge ("ALJ") Susan Giuffre heard the case on February 18, 2015.  (Tr. 66-78)  At the hearing, Altschuld and his attorney argued that the GPO violated his deceased wife's constitutional rights because the offset was applied to benefits she earned during her lifetime.  (Tr. 70-71)

On March 19, 2015, ALJ Giuffre made the following findings:

1. The Government Pension Offset (GPO) Provisions of the Social Security Act were correctly applied to the claimant's Widower's Insurance Benefits.  (Tr. 10)

2. The exceptions to the GPO provisions do not apply in this case.  (Tr. 11)

3. Widower's Insurance Benefits are not payable to the claimant because the GPO provisions were properly applied.  (Tr. 11)

2

**III.    Law & Analysis**

In this Social Security appeal, Altschuld raises constitutional challenges to the GPO provisions of the Social Security Act. In the context of Social Security appeals, this court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). However, in this case, Altschuld does not dispute the findings of fact or even the ALJ's application of the law. Rather, he challenges the constitutionality of the GPO as applied to him. As will be developed more fully below, the issues raised by Altschuld's appeal have already been decided by the U.S. Supreme Court, and this court does not have the authority to ignore or undo the our highest court's controlling decisions.

**A.    Social Security Law**

State and local government employers that provide their employees with retirement benefits are not required to participate in Social Security. 42 U.S.C. § 410(a)(7). If a state governmental entity provides retirement benefits to its employees and does not participate in Social Security, its employees are "noncovered"; they pay no Social Security taxes on their earnings. 42 U.S.C. § 410(a)(7)(F). Alternatively, individuals employed by private employers and government employers that have agreed to participate in Social Security are "covered," and both employee and employer are required to pay Social Security taxes. 42 U.S.C. § 410(a)(7)(A), 418. People who change jobs or work multiple jobs may have both covered and noncovered earnings during a career.

3

Congress initially created widower's (and spousal and widow) benefits in the 1930s to provide support to individuals who stayed home to raise a family and were, as a result, financially dependent on the working spouse. GOVERNMENT PENSION OFFSET, SSA Publication No. 05-10007.  When both spouses worked outside the home, a widower's benefits are offset by the amount of the individual's own retirement benefit. 42 U.S.C. § 402(k)(3)(A).  This calculation is relatively easy when an individual always worked in covered employment: his own Social Security retirement benefit is subtracted from any Social Security widower's benefit to which he is entitled. 42 U.S.C. § 402(k)(3)(A); (Tr. 40).  But, when an individual receives a pension for noncovered work, the Social Security retirement benefit does not reflect his total retirement benefit.  The GPO was enacted to take into account the additional government pension for noncovered work. GOVERNMENT PENSION OFFSET, SSA Publication No. 05-10007. The GPO, as it currently functions, decreases an individual's widower's benefit amount by two-thirds of his government pension. 42 U.S.C. § 402(f)(2)(A), (k)(5)(A); 20 C.F.R. 404.408a.

Prior to 1977, the Social Security Act required a man seeking widower's benefits to prove that he had received at least one-half support from his spouse; however, women seeking benefits were not required to meet any dependency test.  In March 1977, the Supreme Court held that this distinction violated the equal protection requirement of the Due Process Clause of the Fifth Amendment. *Califano v. Goldfarb,* 430 U.S. 199, 51 L. Ed. 2d 270, 97 S. Ct. 1021 (1977).  In response to this decision, Congress eliminated the dependency test, but also provided that survivor's benefits for both men and women would be offset by the full amount of any pension the claimant received as a result of employment not covered by Social Security, from a federal, state, or local government agency (pension offset provision). Pub. L. 95-216, § 334(c)(2), 91 Stat. 1544, 1545, which states, in pertinent part:

4

> The amount of a widow's insurance benefit . . . shall be reduced (but not below zero) by an amount equal to the amount of any monthly periodic benefit payable to such widow (or surviving divorced wife) for such month which is based upon her earnings while in the service of the Federal Government or any State (or any political subdivision thereof. . .) if, on the last day she was employed by such entity, such service did not constitute "employment" as defined in section 210.

The Secretary implemented 20 C.F.R. § 404.408a to clarify when reduction of spousal benefits is required. The regulation states, in pertinent parts:

> (a) When reduction is required. Unless you meet one of the exceptions in paragraph (b) of this section, your monthly Social Security benefits as a wife, husband, widow, widower, mother, or father will be reduced each month you are receiving a monthly pension from a Federal, State, or local government agency (Government pension) for which you were employed in work not covered by Social Security on the last day of such employment. . .
>
> (e) When effective. This reduction was put into the Social Security Act by the Social Security Amendments of 1977. It only applies to applications for benefits filed in or after December 1977 and only to benefits for December 1977 and later.

**B.    Application**

The GPO applies to Altschuld's benefits. He receives a pension from STRS and he does not challenge the offset as applied to his own Social Security retirement benefits. ECF Doc. 18 at Page ID# 63. However, he does object to the offset being applied to his widower's benefits because he reasons that these benefits derived from his wife's work in the private sector. She paid into Social Security and did not receive a government pension. He contends that the GPO should not be applied to the Social Security benefits she earned during her lifetime.[1] ECF Doc. 18 at Page ID# 63-64.

---

[1] Altschuld also states that this problem (his widower's benefits being offset by his government pension) seldom occurs. ECF Doc. 18 at age ID# 65. Presumably, Altschuld asserts this as a public policy argument for finding the GPO unconstitutional. However, he cites no support for this argument, which is most likely inaccurate. Congress enacted the government pension offset shortly after the Supreme Court decided *Califano v. Goldfarb. See Mathews*, 465 U.S. 728, at 743. It is unlikely that the legislative branch would have responded to the Supreme Court's decision if the perceived windfall to government pensioners "seldom occurred."

5

I find Altschuld's argument to be both understandable and logical.  It makes sense that the money Audrey Altschuld paid into Social Security should be available to her widower after her death, regardless of whether he worked for a government or private entity.  Nevertheless, Altschuld's argument fails because it is based on the mistaken idea that a person who pays into the Social Security trust fund has a property or ownership interest in the funds contributed.  However, the U.S. Supreme Court has clearly explained that there is no "right" in Social Security benefit payments.  In *Flemming v. Nestor*, 363 U.S. 603, 4 L. Ed. 2d 1435, 80 S. Ct. 1367 (1960), the Supreme Court addressed a similar claim with respect to Social Security benefits.  In *Nestor*, an alien who had become eligible for old-age benefits was deported for having been a member of the Communist Party.  Because Section 202(n) of the Social Security Act listed Communist Party membership as ground for benefit termination, Nestor's benefits were stopped.  He sued, alleging that the cancellation of his benefits amounted to an uncompensated taking of his property in violation of the Due Process Clause of the Fifth Amendment.

In rejecting the argument, the Supreme Court held that a person covered by the Act does not have such a right in benefit payments "as would make every defeasance of 'accrued' interests" violative of the Fifth Amendment. *Id.* at 611.  The Court noted that the Social Security system was aptly described as a form of insurance implemented to aid the retired and the disabled. *Id.* at 609, relying on *Helvering v. Davis*, 301 U.S. 619, 81 L. Ed. 1307, 57 S. Ct. 904 (1937).  Although a person who contributes to Social Security may ultimately become a beneficiary of the program, his right to benefits is not predicated on the amount of money he has put into the system.  Thus, according to the Supreme Court, contributing to Social Security creates a noncontractual interest on the part of the contributing employee which cannot be

6

analyzed to that of the holder of an annuity "whose right to benefits is bottomed upon on his contractual premium payments." *Id.* at 610.

Altschuld argues that the GPO violates the Fifth Amendment's proscription against uncompensated governmental seizure of private property. ECF Doc. 18 at Page ID# 63. He also argues that the GPO, applied to his widower's benefits, was "larceny." ECF Doc. 18 at Page ID# 64-65. But, the Supreme Court stated, "[t]o engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands." *Id.* at 610. This concept, the Court stated, is embodied in the text of the Act itself, which expressly reserves the right to alter, amend, or repeal any provision. 42 U.S.C. § 1304. Thus, regulations which limit or even deny Social Security benefits do not violate the Due Process Clause unless they are arbitrary and capricious. *Nestor*, 363 U.S. at 611; *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* Inc., 467 U.S. 837, 844, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984); *Koch v. Secretary of Department of Health, Educ. and Welfare*, 590 F.2d 260 (8th Cir. 1978) (Only a deprivation where there is a patently arbitrary classification utterly lacking in rational justification.) Because the Altschulds did not have any property rights in their Social Security benefits, the offset provision cannot be viewed as a taking or a theft. This court need not undertake a Fifth Amendment takings analysis because there was no taking. The Altschulds had no property interest in future Social Security benefits.

The commissioner cites *Heckler v. Mathews*, 465 U.S. 728, 79 L. Ed. 2d 646, 104 S. Ct. 1387 (1984) to support her argument that Congress had a legitimate fiscal purpose in creating the GPO: to preserve the Social Security trust fund. The *Mathews* court recounted the concerns of Congress which led to the 1977 amendments to the Act, most importantly that double benefits may have cost the fund in excess of $190 million. *Id.* at 732. Congress went to great lengths to

modify the Act so as to preserve the Social Security trust fund while also affording "protection to those who anticipated receiving their spouse's benefits prior to March 1977 without providing it also to those [who] would qualify only as a result of [the *Goldfarb*] decision." *Id.* at 743 (emphasis in original) (citing 123 Cong. Rec. 39134 (1977)).  The GPO provision of the Social Security Act was not arbitrary or capricious.  Its application did not deprive Altschuld or his deceased wife of any right secured by the Constitution.

Altschuld also argues that the GPO deprived Mrs. Altschuld of the equal protection of the law by offsetting the amount her widower would receive after she died.  ECF Doc. 18 at Page ID# 64.  Altschuld fails to state a violation of his or his wife's equal protection rights.  In equal protection analysis, a legislative classification must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest.  *See Mathews v. De Castro,* 429 U.S. 181, 185, 97 S. Ct. 431, 434, 50 L. Ed. 2d 389 (1976);  *Weinberger v. Salfi,* 422 U.S. 749, 769, 95 S. Ct. 1764, 1768, 36 L. Ed. 2d 583 (1975);  *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S. Ct. 254, 257, 30 L. Ed. 2d, 231 (1971);  *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 1161, 25 L. Ed. 2d 491 (1970); *Nestor,* 363 U.S. at 611.

In *Mathews v. De Castro,* the Supreme Court applied a rational basis test to an equal protection challenge to the Social Security old-age insurance benefits:

> The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established.  Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts.  The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis,* 301 U.S. 619, 640.  In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect.  If the classification has some 'reasonable basis' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some irregularity.'" *Dandridge v. Williams,* 397 U.S. 471, 485.

8

> To be sure, the standard by which legislation such as this must be judged "is not a toothless one." *Mathews v. Lucas,* 427 U.S. 495, 510. But the challenged statute is entitled to a strong presumption of constitutionality. "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straightjacket." *Jefferson v. Hackney,* 406 U.S. 535, 546.

*Mathews,* 429 U.S. at 185. Here, as in *Mathews,* the provision challenged involves social welfare and neither infringes upon a fundamental right nor utilizes classifications that are suspect. Thus, the question of constitutionality must be measured by the traditional rational basis standard. *See Weinberger,* 422 U.S. at 769-772.

Under this standard, and based on the legislative history, it was not irrational for Congress to reduce Social Security benefits payable to surviving spouses by the amount of government pensions they receive. *Miller v. Dept. Health & Human Servs.,* 517 F. Supp. 1192, 1195 (E.D.N.Y. 1981). 42 U.S.C. § 402(f)(2) is rationally calculated to avoid windfall benefits which would have otherwise been payable to government pensioners due to the effect of *Califano v. Goldfarb*, 430 U.S. 199, 97 S. Ct. 1021, 51 L. Ed. 2d 270 (1977) upon the Social Security Act. *See* Report of the Committee on Finance, United States Senate, 95th Cong., 1st Sess., Rep.No. 95-572, at 27 (Oct. 29, 1977) ("Finance Report"). *See also Duffy v. Harris*, (Jan. 1980-Sept. 1980) Unemp. Ins. Rep. (CCH), P 16, 906 (D.N.M.1979). *See generally Hudgins v. Harris*, (Jan. 1980-Sept. 1980) Unemp. Ins. Rep. (CCH), P 17, 059 (D. Maryland 1980).

Under the Social Security program, an individual who is entitled to two benefits does not receive the full amount of each benefit. 42 U.S.C. § 402(k) et seq. However, subsequent to *Califano v. Goldfarb*, *supra,* and prior to the enactment of 42 U.S.C. § 402(f)(2), persons who received civil service pensions from non-covered employment also collected widow's or widower's insurance benefits in full, regardless of any dependency factor. Finance Report,

9

*supra*. This result was incompatible with the legislative intent of widows' and widowers' insurance benefits, which reflected the congressional effort to aid dependent spouses of deceased wage earners. S. Rep. No. 1669, 81st Cong., 2d Sess., 28 (1950). *See Califano v. Goldfarb*, 430 U.S. 199, 214-217, 97 S. Ct. 1021, 1030-32, 51 L. Ed. 2d 270 (1977). It was also incompatible with the general aim of the Social Security insurance program, which is designed to prevent public dependency by protecting workers and their families against common economic hazards. H. R. Rep. No. 615, 74th Cong., 1st Sess., 1 (1935).

Congress's intent in enacting the GPO provisions was to prevent duplicative payments and to ensure that an individual's total governmental benefits, including governmental pensions and Social Security payments, would not exceed certain levels. *Miller,* 517 F. Supp. at 1195. In light of the goals of the Social Security insurance program, the power of Congress to fix the level of benefits under the Social Security Act, and the absence of any contractual claim to receive funds from the public treasury, Congress's enactment of 42 U.S.C. § 402(f)(2) was not arbitrary and did not violate the Equal Protection clause of the Fifth Amendment on its face or as applied. *See Richardson v. Belcher*, 404 U.S. 78, 92 S. Ct. 254, 30 L. Ed. 2d 231 (1971).

The GPO was a deliberate and considered choice by Congress and the classification (between those who have government pensions and those who don't) was not arbitrary. It was rationally related to the legitimate legislative desire to restrict the limited federal resources available where governmental pension and Social Security insurance benefits serve a common purpose. *See generally Schweiker, Secretary Health and Human Services v. Wilson*, 450 U.S. 221, 101 S. Ct. 1074, 67 L. Ed. 2d 186 (1981). The GPO provisions, specifically as applied to Altschuld, do not violate the Equal Protection clause of the Fifth Amendment.

### IV. Recommendation

Because the Commissioner's findings are supported by substantial evidence and because Altschuld fails to demonstrate that the government pension offset provisions of the Social Security Act violate the U.S. Constitution, I recommend that the final decision of the Commissioner be AFFIRMED.

Dated: August 14, 2018

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).